

## IN THE SUPERIOR COURT OF FULTON COUNTY, GEORGIA
### 136 PRYOR STREET, ROOM C-103, ATLANTA, GEORGIA 30303
### SUMMONS

Christian Hammerson ) Case No.: 2013CV234000

_____
**Plaintiff,**

vs.

US Bank N.A., and

Richard D. Mapper, P.C.

**Defendant**

TO THE ABOVE NAMED DEFENDANT(S):

You are hereby summoned and required to file with the Clerk of said Court and serve upon plaintiff's attorney, whose name and address is:

Grady Roberts
94 Howell St
ATL GA 30312

An answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service; unless proof of service of this complaint is not filed within five (5) days of such service. Then time to answer shall not commence until such proof of service has been filed. **IF YOU FAIL TO DO SO, JUDGMENT BY DEFAULT WILL BE TAKEN AGAINST YOU FOR THE RELIEF DEMANDED IN THE COMPLAINT.**

This _____2_____ day of August, 20 13

Honorable Cathelene "Tina" Robinson
Clerk of Superior Court
By_____
Deputy Clerk

To defendant upon whom this petition is served:
This copy of complaint and summons was served upon you _____, 20_____

_____
**Deputy Sherriff**

Instructions: Attach addendum sheet for additional parties if needed, make notation on this sheet if addendum is used

**EXHIBIT**
**A**

**COPY**

# IN THE SUPERIOR COURT OF FULTON COUNTY STATE OF GEORGIA



FILED IN OFFICE

AUG - 2 2013

DEPUTY CLERK SUPERIOR COURT
FULTON COUNTY, GA

| | |
|---|---|
| CHRISTIAN HAMMERSEN, | **CASE NO.** |
| Plaintiff, | 2013CV234600 |
| v. | **DEMAND FOR JURY TRIAL** |
| U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR STRUCTURED ASSET SECURITIES CORPORATION MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-W1 AND RICHARD B. MANER, P.C., | **INJUNCTIVE RELIEF SOUGHT** |
| | **ACTION FOR GENERAL, SPECIFIC, STATUTORY, AND PUNITIVE DAMAGES FOR WRONGFUL FORECLOSURE, TRESPASS, BREACH OF CONTRACT, BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING, AND VIOLATIONS OF THE GEORGIA RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT (RICO)** |
| Defendants. | |

## COMPLAINT FOR DAMAGES & INJUNCTIVE RELIEF

**NOW COMES PLAINTIFF** *CHRISTIAN HAMMERSEN* (hereinafter "Plaintiff") by and through undersigned counsel and makes and files this Complaint against Defendants *U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR STRUCTURED ASSET SECURITIES CORPORATION MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-W1 AND RICHARD B. MANER, P.C.,* (hereinafter "Defendants") and hereby petitions this Honorable Court for damages and other relief, as follows:

## INTRODUCTION

Plaintiff brings this action to challenge the illegal, unfair and deceptive collection practices of defendants and seeks to enjoin and recover general, specific, statutory, and punitive damages from defendants. Specifically, Plaintiff seeks injunctive relief pursuant to Ga. Code Ann. § 16-14-6 to enjoin violations of Ga. Code Ann. § 16-14-4 by issuing orders divesting the defendants of any interest in real property or personal property, imposing reasonable restrictions upon the future

activities and investments of the defendants including, but not limited to, prohibiting any defendant from engaging in the same type of endeavor that is violative of Code Section 16-14-4. In addition, Plaintiff seeks general, specific, statutory, and punitive damages for Breach of Contract, Breach of the Duty of Good Faith and Fair Dealing, Attorney Fees and Costs, Invasion of Privacy, Wrongful Foreclosure, Trespass, Wrongful Repossession, Conversion, and violations of the Georgia Racketeer Influenced and Corrupt Organizations Act (RICO).

## JURISDICTION

### 1.

Subject matter jurisdiction is proper as the Superior Court has jurisdiction over all causes, both civil and criminal, granted by the Constitution and laws of this State. Ga. Const. art. VI, § 4, ¶ I; O.C.G.A. § 15-6-8 and O.C.G.A. § 9-4-2.

## VENUE

### 2.

Venue is proper in this Court pursuant to Ga. Const. art. VI, § 2, ¶ IV which allows suits involving joint obligors, joint tort-feasors, joint promisors, copartners, or joint trespassers residing in different counties to be tried in either county.

## PARTIES

### 3.

Plaintiff *CHRISTIAN HAMMERSEN (herein after "Plaintiff")* is a person residing in White County, Georgia.

### 4.

Defendant, *U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR STRUCTURED ASSET SECURITIES CORPORATION MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-W1 (herein after "US BANK")* is foreign Trustee, organized and existing under the laws of another state not authorized to do business in Georgia, whose principal place of business is located at 425 Walnut Street, Cincinnati, OH 45202. Defendant is subject to the Jurisdiction of this Court pursuant to Ga. Code Ann. § 9-10-91 (West) as it transacts business within this state. Defendant, as a nonresident Trustee who failed to appoint a registered agent or maintain a registered office and pursuant to Ga. Code. Ann. § 53-12-320 may be served by delivering a copy of the Summons and Complaint upon the Secretary of State at 2 Martin Luther King, Jr. Drive, Suite 313, Floyd West

Tower Atlanta, GA 30334-1530.[1]

**5.**

Defendant, *RICHARD B. MANER, P.C., (hereinafter "MANER")* is domestic corporation, organized and existing under the laws of Georgia, whose principal place of business is located at 5775 Glenridge Dr. NE, Sandy Springs, GA 30328. Defendant is subject to the Jurisdiction of this Court. Defendant, as a domestic corporation and may be served by delivering a copy of the Summons and Complaint upon the registered agent Richard Maner at 5775 Glenridge Drive, Building D, Suite 100, Atlanta, GA 30328.

## SUMMARY OF FACTS

Plaintiff shows, for purposes of declaratory relief, that there is an actual controversy between the Plaintiff and Defendants, growing out of the following statement of facts, to-wit:

**6.**

The subject real property is located at 35 Fussen St, Helen, GA 30545 (hereinafter the "Subject Property") having a legal description described in Exhibit A attached hereto. **See Exhibit A.**

**7.**

The Plaintiff acquired the subject property through Warranty Deed, filed and recorded in the Superior Court of White County Real Estate Records at Book 5Q, Page 325.

**8.**

On March 23, 2006, Plaintiff executed a Security Deed in favor of MERS as nominee for Wilmington Finance, Inc. as filed and recorded in the Superior Court of White County Real Estate Records at Book 1099, Page 507. **See Exhibit B.**

**9.**

On or about May 23, 2011, the aforementioned Security Deed, was subsequently assigned by MERS, as nominee for Wilmington Finance, Inc. to JPMorgan Chase Bank, NA, successor by merger to Chase Home Finance, LLC, as filed and recorded in the Superior Court of White County Real Estate Records at Book 1404, Page 511. **See Exhibit C**

---

[1] Am. Photocopy Equip. Co. v. Lew Deadmore & Associates, Inc., 127 Ga. App. 207, 211, 193 S.E.2d 275, 278 (1972)

**10.**

On or about January 26, 2012, the aforementioned Security Deed, was subsequently assigned by JPMorgan Chase Bank, N.A. to U.S. Bank National Association, as Trustee for Structured Asset Securities Corporation, Mortgage Pass-Through Certificates, Series 2006-W1, as filed and recorded in the Superior Court of White County Real Estate Records at Deed Book 1434, Page 157. *See* **Exhibit D**

**11.**

On or about July 11, 2013, Defendant, U.S. Bank through its agent Maner advertised the subject property for foreclosure sale in the Legal Organ of White County with a sale date set for August 6, 2013. **See Exhibit E.**

**12.**

The aforementioned Notice failed to satisfy the mandatory statutory requirements as set forth in paragraph 22 of the Security Deed rendering the non-judicial foreclose premature and invalid.

**13.**

The aforementioned Notice failed to satisfy the requirements as set forth pursuant to O.C.G.A. § 44-14-162.2 as it did not include the individual or entity who had the full authority to negotiate, amend, and modify all terms of the mortgage with the plaintiff. Failure to comply with the mandatory statutory requirements rendered the non-judicial foreclose premature and invalid.

## FIRST CLAIM FOR RELIEF

(WRONGFUL FORECLOSURE)[2]

**14.**

Plaintiff hereby incorporates by reference paragraphs 1 through 13 as if same were fully set forth at length herein.

**15.**

Defendants had a duty to conduct their foreclosure of the Plaintiff's property fairly and in good faith.

**16.**

Defendants, in the context of foreclosing the Security Deed, knowingly and intentionally published

---

[2] Approved as sufficiently pled in Racette v. Bank of Am., N.A., 318 Ga. App. 171, 177, 733 S.E.2d 457, 463 (2012)

untrue and inaccurate information concerning title to the Plaintiff's Property

**17.**

Defendant's actions in knowingly and intentionally publishing untrue and inaccurate information concerning title to the Plaintiff's Property were extreme and outrageous.

**18.**

As a result of the Defendant's actions and conduct, the Defendants breached their duty to conduct the foreclosure of the Property fairly because the bidding at the Defendant's foreclosure of the Plaintiff's Property was chilled.

**19.**

The Defendant's breach has caused Plaintiffs injury and damage including severe emotional distress.

**20.**

Defendants have acted in bad faith, have been stubbornly litigious and have put plaintiff's to unnecessary trouble and expense entitling them to an award of attorney's fees and costs pursuant to O.C.G.A. § 13-6-11 in an amount to be proven at trial.

**21.**

The Wrongful acts of the Defendants were willful, malicious, fraudulent, wanton, oppressive, or showed the entire want of care that would raise the presumption of conscious indifference to the consequences of their conduct.

**22.**

Defendant acted, or failed to act, with the specific intent to cause harm to the Plaintiffs and Plaintiffs are entitled to recover punitive and other enhanced damages, plus attorney's fees and expenses, as a result of the wrongful acts of Defendants.

## SECOND CLAIM FOR RELIEF

### (BREACH OF CONTRACT)[3]

**23.**

Plaintiff hereby incorporates by reference paragraphs 1 through 13 as if same were fully set forth at length herein.

**24.**

The Plaintiff's and Defendant U.S. Bank have an assumed contractual relationship as evidenced by

---

[3] Approved as sufficiently pled in Racette v. Bank of Am., N.A., 318 Ga. App. 171, 177, 733 S.E.2d 457, 463 (2012)

the assignment of the Security Deed.

**25.**

Defendant U.S. Bank breached its contractual relationship with Plaintiff's by failing to conduct the foreclosure of the Property fairly.

**26.**

Defendant U.S. Bank's repeated breaches of contract have cause Plaintiffs to be damaged.

**27.**

Defendant U.S. Bank has acted in bad faith, has  been stubbornly litigious and has put Plaintiffs to unnecessary trouble and expense entitling them to an award of attorney's fees and costs pursuant to O.C.G.A. § 13-16-11 in an amount to be proven at trial.

## THIRD CLAIM FOR RELIEF

### (BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING)[4]

**28.**

Plaintiff hereby incorporates by reference paragraphs 1 through 13 as if same were fully set forth at length herein.

**29.**

Defendant U.S. Bank had a duty to abide by the terms of the underlying Note and Security Deed in connection with any effort to foreclose on the Plaintiff's home.

**30.**

Before and during the maintenance of foreclosure proceeding against the Plaintiff's home, the Defendants ignored the Plaintiff's concerning errors in the 2013 advertisement and repeated statements from the inaccuracies in the 2013 advertisement and thereafter foreclosed on the property.

**31.**

The Defendants failed to conduct the foreclosure of the Plaintiffs Property in good faith.

**32.**

The Plaintiffs have been damaged by the Defendant's wrongful conduct in an amount to be proven at trial.

**33.**

Defendants have acted in bad faith, have been stubbornly litigious and have put Plaintiff's through

---

[4] Approved as sufficiently pled in Racette v. Bank of Am., N.A., 318 Ga. App. 171, 177, 733 S.E.2d 457, 463 (2012)

unnecessary trouble and expense entitling them to an award of attorney's fees and costs pursuant to O.C.G.A. § 13-6-11 in an amount to be proven at trial.

### FOURTH CLAIM FOR RELIEF

(PUNITIVE DAMAGES)[5]

#### 34.

Plaintiff hereby incorporates by reference paragraphs 1 through 13 as if same were fully set forth at length herein.

#### 35.

The wrongful acts of Defendants were willful, malicious, fraudulent, wanton, oppressive, or showed that entire want of care that would raise to the presumption of conscious indifference to the consequences of their conduct.

#### 36.

Defendants' acts and omissions were done with the specific intent to cause harm to the Plaintiff and the Plaintiff is entitled to recover punitive and other enhanced damages, plus attorney's fees and expenses, as a result of the wrongful acts of the Defendants.

### FIFTH CLAIM FOR RELIEF

(ATTORNEYS' FEES AND COSTS)[6]

#### 37.

Plaintiff hereby incorporates by reference paragraphs 1 through 13 as if same were fully set forth at length herein.

#### 38.

Defendants have acted in bad faith, have been stubbornly litigious and have put Plaintiff to unnecessary trouble and expense entitling them to an award of attorney's fees and costs pursuant to O.C.G.A. § 13-6-11 in an amount to be proven at trial.

### SIXTH CLAIM FOR RELIEF

(INVASION OF PRIVACY)

#### 39.

Plaintiff hereby incorporates by reference paragraphs 1 through 13 as if same were fully set forth at

---

[5] Approved as sufficiently pled in Racette v. Bank of Am., N.A., 318 Ga. App. 171, 177, 733 S.E.2d 457, 463 (2012)
[6] Approved as sufficiently pled in Racette v. Bank of Am., N.A., 318 Ga. App. 171, 177, 733 S.E.2d 457, 463 (2012)

length herein.

**40.**

Defendants' above actions violated Plaintiff's right of privacy by placing the Plaintiff in a false light before the eyes of others, including potential credit grantors and creditors as well as family, friends and the general public.

**41.**

By such unauthorized publication and circulation of Plaintiff's name and the inaccurate information, Defendants invaded Plaintiff's right to privacy, subjected Plaintiff to ridicule and contempt, injured Plaintiff's personal esteem, reflected disgracefully on Plaintiff's character, diminished Plaintiff's high standing, reputation and good name among family, friends, neighbors and business associates, destroyed Plaintiff's peace of mind, and caused Plaintiff severe mental and emotional distress.

**42.**

The conduct of Defendants was a direct and proximate cause, as well as a substantial factor, in bringing about the serious injuries, damages and harm to Plaintiff that are outlined more fully above.

## SEVENTH CLAIM FOR RELIEF

(DECLARATORY JUDGMENT)

**43.**

Defendant seeks a Declaratory Judgment & Injunctive Relief pursuant to Ga. Code Ann. §§ 9-4-1 et seq., Uniform Superior Court Rule 6.7 and Ga. Code Ann. §§ 9-11-65(a) and (b) against the plaintiff. Specifically, defendant seeks a temporary restraining order pursuant to Ga. Code Ann. § 9-11-65(b) to enjoin the enforcement of void title instruments.

Subject matter jurisdiction is only proper in the Superior Court pursuant to Ga. Code Ann. § 9-4- 2.

## EIGHTH CLAIM FOR RELIEF

(REFORMATION AND CANCELLATION)

**44.**

Due to fraud, the real estate records do not accurately reflect the respective interests of the parties before this court, therefore, the Plaintiff prays that the security deed be reformed and deemed satisfied. This is an appropriate equitable remedy as there is no adequate remedy at law to restore the parties to

their respective positions.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on any and all issues triable by a jury. The law in Georgia regarding the right to trial by jury is clear. In civil actions, the right to trial by jury exists only where the right existed prior to the adoption of the first Georgia Constitution.[7] The 1983 Georgia Constitution and O.C.G.A § 9-11-38 assure that this right shall remain inviolate.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays for judgment against all Defendants, and each of them as follows:

A. As to *first claim of relief,* compensatory and punitive damages in an amount to be determined at time of trial, attorney's fees;

B. As to *second claim of relief,* compensatory and punitive damages in an amount to be determined at time of trial, attorney's fees;

C. As to *third claim of relief,* compensatory and punitive damages in an amount to be determined at time of trial, attorney's fees;

D. As to *fourth claim of relief* prayer as pled above;

E. As to *fifth claim of relief* prayer as pled above;

F. As to *sixth claim of relief,* compensatory and punitive damages in an amount to be determined at time of trial, attorney's fees;

G. As to *seventh claim of relief* prayer as pled above;

H. As to *eigth claim of relief* prayer as pled above;

I. As to all counts that a jury award a different measure of damages on each and every claim as the evidence establishes several distinct torts.

J. As to all counts, attorney's fees as allowed by law, prejudgment interest at the statutory rate and all other costs of this proceeding allowed by law;

K. For other and further relief as Plaintiff may be entitled as provided under Georgia law

---

[7] Dept. of Transp. v. Del-Cook Timber Co., 248 Ga. 734(8), 285 S.E.2d 913 (1982); Bell v. Cronic, 248 Ga. 457(1), 283 S.E.2d 476 (1981); Strange v. Strange, 222 Ga. 44(2), 148 S.E.2d 494 (1966); Metropolitan Cas. Ins. Co., etc. v. Huhn, 165 Ga. 667(2), 142 S.E. 121 (1927).

L.  That Plaintiff have such other and further relief as is just and proper.

This _____ day of August, 2013          Respectfully submitted,

GRADY A. ROBERTS III
Georgia Bar No. 609540
Attorney for Plaintiff
94 Howell Street, NE
Atlanta, GA  30312
(404) 794-7000 phone
(404) 794-7001 fax

# EXHIBIT A

All that tract or parcel of land lying and being in Land Lot 40 of the 3rd Land District of White County, Georgia, and being more particularly described as follows:

To locate the beginning point, begin as the intersection of land lots 24, 25, 40 and 41, said district and county; thence South 50° 06 minutes West 1,776.65 feet to a point in the centerline of a branch and true point of beginning (said point being the Northerly most point of the hereinafter described tract and the Westerly most point of Lot 9, Cattahoochee Trails Subdivision); thence South 49° 45 minutes East 267.13 feet to an iron pin on the Northwesterly right-of-way of a 40 feet road; thence along and with the right-of-way of said road South 43° 04 minutes West 135.25 feet to a point; and South 14° 47 minutes West 69.63 feet to on iron pin at the intersection of the last mentioned 40 foot road and a second 40 foot road right-of-way; thence along and with the Northerly right-of-way of the last mentioned 40 feet road right-of-way South 85 ° 11 minutes West 62.20 feet to a point in the center of branch (half branch); thence along and with the centerline of said branch of the following courses and distances: North 7° 14 minutes West 11.38 feet to a point; thence North 23° 35 minutes West 207.12 feet to a point; and North 42° 31 minutes East 115 feet to a point in the center of said branch and true point of beginning. Said tract containing 1.12 acres more or less and being depicted as Tract B Cattahoochee Trails at shown on plat of survey conducted by R.N. Johnson Associates, Inc., R.S., dated November 24, 1980, recorded in Plat Book 14, Page 169, White County, Georgia, Deed Records.

BEING KNOWN AS PARCEL NUMBER: H-04D-38

# EXHIBIT B

2006 APR -3 PM 3: 57
BOOK 1099 PAGE 507-522
DENA H. ADAMS, CLERK
WHITE COUNTY, GA

White County, Georgia
Intangible Tax
Paid $ 808.50
Date 4-3-2006
Dena M. Adams
Clerk of Superior Court

Wilmington Finance, Inc.
401 Plymouth Road, Suite 400
Plymouth Meeting, PA 19462

Direct Settlement Services

Prepared By:
Wilmington Finance, Inc.
6155 Rockside Road, Suite 201
Independence, OH 44131

After recording return to
FIRST SETTLEMENT SERVICES
300 PENN CENTER BLVD.
SUITE 303
PITTSBURGH, PA 15235

[Space Above This Line For Recording Data]

# SECURITY DEED

Loan Number: 43000102 29

MIN 100372406032333756

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated March 23, 2006, together with all Riders to this document.

(B) "Borrower" is

CHRIS HAMMERSEN

Borrower is the grantor under this Security Instrument.

(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the grantee under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

GEORGIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS            Form 3011 1/01

GA6A(GA) (0009).01
Page 1 of 14
VMP MORTGAGE FORMS, INC. - (800)521-7291

DDS-GA1

(D) **"Lender"** is Wilmington Finance, Inc.

Lender is a **Corporation**
organized and existing under the laws of **Delaware**
Lender's address is  401 Plymouth Road, Suite 400
Plymouth Meeting, PA  19462

(E) **"Note"** means the promissory note signed by Borrower and dated   **March 23, 2006**
The Note states that Borrower owes Lender
Two Hundred Sixty-Seven Thousand Five Hundred and 00/100                                        **Dollars**
(U.S. $ **267,500.00** ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than     **April 1, 2036**

(F) **"Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

(G) **"Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(H) **"Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |

(I) **"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(J) **"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(K) **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(L) **"Escrow Items"** means those items that are described in Section 3.

(M) **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(N) **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(O) **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(P) **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used

DDS-GAT

**6A(GA)** (0001).01                                              Page 2 of 15                                              Form 3011 1/01

in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS, with power of sale, the following described property located in the

| County | of | WHITE | : |
| [Type of Recording Jurisdiction] | | [Name of Recording Jurisdiction] | |

SEE COMPLETE LEGAL DESCRIPTION DESCRIBED IN EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF

Parcel ID Number: H-04D-38                                               which currently has the address of

35 FUSSEN STRASSE STREET                                                             [Street]

HELEN                                               [City] , Georgia           30545-              [Zip Code]

("Property Address"):

TO HAVE AND TO HOLD this property unto MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, forever, together with all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

-6A(GA) (0005).01                                      Page 3 of 13                    Initials                    Form 3011 1/01

DDS-GAT

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. Application of Payments or Proceeds. Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. Funds for Escrow Items. Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property (as set forth below). Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, making repairs, replacing doors and windows, draining water from pipes, and eliminating building or other code violations or dangerous conditions. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage Insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

-6A(GA) (0008).01
DDS-GAT

Page 9 of 13

Initials: _____

Form 3011 1/01

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale granted by Borrower and any other remedies permitted by Applicable Law. Borrower appoints Lender the agent and attorney-in-fact for Borrower to exercise the power of sale. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give a copy of a notice of sale by public advertisement for the time and in the manner prescribed by Applicable Law. Lender, without further demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Lender determines. Lender or its designee may purchase the Property at any sale.

Lender shall convey to the purchaser indefeasible title to the Property, and Borrower hereby appoints Lender Borrower's agent and attorney-in-fact to make such conveyance. The recitals in the Lender's deed shall be prima facie evidence of the truth of the statements made therein. Borrower covenants and agrees that Lender shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it. The power and agency granted are coupled with an interest, are irrevocable by death or otherwise and are cumulative to the remedies for collection of debt as provided by Applicable Law.

If the Property is sold pursuant to this Section 22, Borrower, or any person holding possession of the Property through Borrower, shall immediately surrender possession of the Property to the purchaser at the sale. If possession is not surrendered, Borrower or such person shall be a tenant holding over and may be dispossessed in accordance with Applicable Law.

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Waiver of Homestead.** Borrower waives all rights of homestead exemption in the Property.

**25. Assumption Not a Novation.** Lender's acceptance of an assumption of the obligations of this Security Instrument and the Note, and any release of Borrower in connection therewith, shall not constitute a novation.

**26. Security Deed.** This conveyance is to be construed under the existing laws of the State of Georgia as a deed passing title, and not as a mortgage, and is intended to secure the payment of all sums secured hereby.

BORROWER ACCEPTS AND AGREES to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

IN WITNESS WHEREOF, Borrower has signed and sealed this Security Instrument.

_____ (Seal)    _____ (Seal)
-Borrower                                   -Borrower

CHRIS HAMMERSEN

_____ (Seal)    _____ (Seal)
-Borrower                                   -Borrower

_____ (Seal)    _____ (Seal)
-Borrower                                   -Borrower

_____ (Seal)    _____ (Seal)
-Borrower                                   -Borrower

STATE OF GEORGIA,
  Signed, sealed and delivered in the presence of:     White County ss:

                                                        _____
                                                        Unofficial Witness   Richard Smith

                                                        _____
                                                        Notary Public,        White      County
                                                        State of Georgia

[Notary seal: PEGGY L. BROWN / NOTARY PUBLIC / GWINNETT COUNTY, GA / MY COMMISSION EXPIRES JUNE 15, 200_]

GEORGIA-

GRANTOR: CHRIS HAMMERSEN


LENDER:  Wilmington Finance, Inc.

DATE OF SECURITY DEED:  March 23, 2006

### WAIVER OF BORROWER'S RIGHTS

BY EXECUTION OF THIS PARAGRAPH, GRANTOR EXPRESSLY: (1) ACKNOWLEDGES THE RIGHT TO ACCELERATE THE DEBT AND THE POWER OF ATTORNEY GIVEN HEREIN TO LENDER TO SELL THE PREMISES BY NONJUDICIAL FORECLOSURE UPON DEFAULT BY GRANTOR WITHOUT ANY JUDICIAL HEARING AND WITHOUT ANY NOTICE OTHER THAN SUCH NOTICE AS IS REQUIRED TO BE GIVEN UNDER THE PROVISIONS HEREOF; (2) WAIVES ANY AND ALL RIGHTS WHICH GRANTOR MAY HAVE UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES, THE VARIOUS PROVISIONS OF THE CONSTITUTION FOR THE SEVERAL STATES, OR BY REASON OF ANY OTHER APPLICABLE LAW TO NOTICE AND TO JUDICIAL HEARING PRIOR TO THE EXERCISE BY LENDER OF ANY RIGHT OR REMEDY HEREIN PROVIDED TO LENDER, EXCEPT SUCH NOTICE AS IS SPECIFICALLY REQUIRED TO BE PROVIDED HEREOF; (3) ACKNOWLEDGES THAT GRANTOR HAS READ THIS DEED AND SPECIFICALLY THIS PARAGRAPH AND ANY AND ALL QUESTIONS REGARDING THE LEGAL EFFECT OF SAID DEED AND ITS PROVISIONS HAVE BEEN EXPLAINED FULLY TO GRANTOR AND GRANTOR HAS BEEN AFFORDED AN OPPORTUNITY TO CONSULT WITH COUNSEL OF GRANTOR'S CHOICE PRIOR TO EXECUTING THIS DEED; (4) ACKNOWLEDGES THAT ALL WAIVERS OF THE AFORESAID RIGHTS OF GRANTOR HAVE BEEN MADE KNOWINGLY, INTENTIONALLY AND WILLINGLY BY GRANTOR AS PART OF A BARGAINED FOR LOAN TRANSACTION; AND (5) AGREES THAT THE PROVISIONS HEREOF ARE INCORPORATED INTO AND MADE A PART OF THE SECURITY DEED.


READ AND AGREED BY GRANTOR:

Signed, Sealed and delivered in the presence of:

_____
Richard Smith

_____
Notary Public

_____ (Seal)
CHRIS HAMMERSEN                    -Grantor

_____ (Seal)
                                   -Grantor

_____ (Seal)
                                   -Grantor

_____ (Seal)
                                   -Grantor

_____ (Seal)
                                   -Grantor

_____ (Seal)
                                   -Grantor

_____ (Seal)
                                   -Grantor

-950(GA) (0607)
DDS-GA4

VMP Mortgage Solutions (800) 521-7291
Page 1 of 2

7/03

### CLOSING ATTORNEY'S AFFIDAVIT

Before the undersigned attesting officer personally appeared the undersigned closing attorney, who, having been first duly sworn according to law, states under oath as follows:

In closing the above loan, but prior to the execution of the Deed to Secure Debt and "Waiver of the Borrower's Rights" by the Borrower(s), I reviewed with and explained to the Borrower(s) the terms and provisions of the Deed to Secure Debt and particularly the provisions thereof authorizing the Lender to sell the secured property by a nonjudicial foreclosure under a power of sale, together with the "Waiver of Borrower's Rights" and informed the Borrower(s) of Borrower's rights under the Constitution of the State of Georgia and the Constitution of the United States to notice and a judicial hearing prior to such foreclosure in the absence of a knowing, intentional and willing contractual waiver by Borrower(s) of Borrower's rights. After said review with and explanation to Borrower(s), Borrower(s) executed the Deed to Secure Debt and "Waiver of Borrower's Rights."

Based on said review with and explanation to the Borrower(s), it is my opinion that Borrower(s) knowingly, intentionally and willingly executed the waiver of Borrower(s) constitutional rights to notice and judicial hearing prior to any such nonjudicial foreclosure.

Sworn to and subscribed before me _____ on the date set forth above.

_Judy M. Turner_                                            _Peggy ___ ___

                                                              Closing Attorney

---

### FORECLOSURE CLOSING DISCLOSURE

O.C.G.A. Section 7-1-1014(3) requires that we inform you that if you fail to meet any condition or term of the documents that you sign in connection with obtaining a mortgage loan you may lose the property that serves as collateral for the mortgage loan through foreclosure.

_____

CHRIS HAMMERSEN

-990(GA) (0007)
DDS-GA4                                    Page 2 of 2                                    7/03

All that tract or parcel of land lying and being in Land Lot 40 of the 3rd Land District of White County, Georgia, and being more particularly described as follows:

To locate the beginning point, begin as the intersection of land lots 24, 25, 40 and 41, said district and county; thence South 50° 06 minutes West 1,776.65 feet to a point in the centerline of a branch and true point of beginning (said point being the Northerly most point of the hereinafter described tract and the Westerly most point of Lot 9, Cattahoochee Trails Subdivision); thence South 49° 45 minutes East 267.13 feet to an iron pin on the Northwesterly right-of-way of a 40 feet road; thence along and with the right-of-way of said road South 43° 04 minutes West 135.25 feet to a point; and South 14° 47 minutes West 69.63 feet to on iron pin at the intersection of the last mentioned 40 foot road and a second 40 foot road right-of-way; thence along and with the Northerly right-of-way of the last mentioned 40 feet road right-of-way South 85 ° 11 minutes West 62.20 feet to a point in the center of branch (half branch); thence along and with the centerline of said branch of the following courses and distances: North 7° 14 minutes West 11.38 feet to a point; thence North 23° 35 minutes West 207.12 feet to a point; and North 42° 31 minutes East 115 feet to a point in the center of said branch and true point of beginning. Said tract containing 1.12 acres more or less and being depicted as Tract B Cattahoochee Trails at shown on plat of survey conducted by R.N. Johnson Associates, Inc., R.S., dated November 24, 1980, recorded in Plat Book 14, Page 169, White County, Georgia, Deed Records.

BEING KNOWN AS PARCEL NUMBER: H-04D-38

# EXHIBIT C

FILED & RECORDED
DATE: 6/2/2011
TIME: 11:20AM
DEED BOOK: 1404
PAGE: 511
FILING FEES: 7.00
CROSS REFS: 1
Dena M. Adams, C.S.C.
White County, GA

FILE NO.       2446516
Loan Type:     Conventional

RECORD AND RETURN TO:
BARRETT, DAFFIN & FRAPPIER, L.L.P.
4004 Beltline, Building 2, Suite 100
Addison, Texas 75001-4417

## TRANSFER AND ASSIGNMENT OF DEED TO SECURE DEBT

FOR VALUE RECEIVED MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR WILMINGTON FINANCE, INC, as Assignor, has this day transferred, sold, assigned, conveyed and set over to JPMORGAN CHASE BANK, NA, SUCCESSOR BY MERGER TO CHASE HOME FINANCE, LLC, as Assignee, whose address is 3415 VISION DRIVE, COLUMBUS, OHIO 43219-6009 its successors, representatives and assigns all of the assignor's right, title and interest in and to that certain Deed to Secure Debt (or Security Deed), executed by CHRIS HAMMERSEN to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR WILMINGTON FINANCE, INC dated 3/23/2006, and Recorded on 4/3/2006 in Book No. 1099 end Page No. 507-522, in the Office of the Clerk of the Superior Court of WHITE County, GEORGIA.

The Assignor herein specifically sells, assigns, transfers and conveys to the Assignee, its successors, representatives and assigns the aforementioned Security Deed the property described therein, the indebtedness secured thereby, together with all the rights, title, interest powers, options, privileges and immunities contained therein. The Assignor herein has this day sold and assigned to the Assignee the Note secured by the aforementioned Security Deed and this transfer is made to secure the Assignee, its successors, representatives, and assigns in the payment of said Note.

Signed, Sealed and Delivered
this 23 day of May , 20 11 ,
in the presence of

_Jeanna Daly_
Unofficial Witness

_Debra Brown_
Notary Public

My Commission Expires 9-7-2016

DEBRA BROWN
Notary Public, State of South Carolina
My Commission Expires 09-07-2016

Signed, Sealed and Delivered
this 23 day of May , 20 11 ,
in the presence of

_____
Unofficial Witness

_Debra Brown_
Notary Public

My Commission Expires 9-7-2016

DEBRA BROWN
Notary Public, State of South Carolina
My Commission Expires 09-07-2016

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS,
INC. AS NOMINEE FOR WILMINGTON FINANCE, INC

_____
By: _____ (L.S.)
Title: Vice President

_____
Attest: _____ (L.S.)
Title: Vice President

(Corporate Seal)

# EXHIBIT D

When Recorded Return To:
JPMorgan Chase Bank, NA
C/O NTC 2100 Alt. 19 North
Palm Harbor, FL 34683

Loan #: 22972277



FILED & RECORDED
DATE: 2/9/2012
TIME: 02:32PM
DEED BOOK: 1434
PAGE: 157
FILING FEES: 7.00
CROSS REFS: 1
Dena M. Adams, C.S.C.
White County, GA

## ASSIGNMENT OF SECURITY DEED

-- -- Contact JPMORGAN CHASE BANK, N.A. for this instrument 780 Kansas Lane, Suite A, Monroe, LA 71203, telephone # (866) 756-8747, which is responsible for receiving payments.

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS") AS NOMINEE FOR WILMINGTON FINANCE, INC., ITS SUCCESSORS AND ASSIGNS, (ASSIGNOR), (MERS Address: P.O. Box 2026, Flint, Michigan 48501-2026) by these presents does convey, grant, sell, assign, transfer and set over the described Security Deed with all interest secured thereby, all liens and any rights due or to become due thereon to U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR STRUCTURED ASSET SECURITIES CORPORATION, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-W1, WHOSE ADDRESS IS 700 KANSAS LANE, MC 8000, MONROE, LA 71203 (866)756-8747, ITS SUCCESSORS OR ASSIGNS, (ASSIGNEE).

Said Security Deed is executed by CHRIS HAMMERSEN to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC and recorded in Deed Book 1099, Page 507, and/or as Instrument # n/a in the office of the Clerk of the Superior Court of WHITE County, Georgia.

In witness whereof, the undersigned has hereunto set their hands on 01 / 26 / 2012 (MM/DD/YYYY).

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS") AS NOMINEE FOR WILMINGTON FINANCE, INC., ITS SUCCESSORS AND ASSIGNS

By: _____   Vice President
Tobias Bryant

And: _____   Vice President
Margietha Williams

_____
Witness KAREN B. McADAMS

_____
Witness Pearl Burch

STATE OF LOUISIANA   PARISH OF OUACHITA
The foregoing instrument was acknowledged before me on 01 / 26 / 2012 (MM/DD/YYYY) by
Tobias Bryant and Margietha Williams as
Vice President and Vice President respectively
of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS") AS NOMINEE FOR WILMINGTON FINANCE, INC., ITS SUCCESSORS AND ASSIGNS, who, being authorized to do so, executed the foregoing instrument for the purposes therein contained. He/she/they is (are) personally known to me.

_____
Cynthia F. Wilmore
Notary Public - State of LOUISIANA
Commission expires: Upon My Death

Return:

Document Prepared By: E.Lance/NTC, 2100 Alt. 19 North, Palm Harbor, FL 34683 (800)346-9152

JPCAS 15666042 — CHASE CJ3508945   MIN 100372406032333756 MERS PHONE 1-888-679-MERS
FRMGA1



*15666042*

# EXHIBIT E

search

home
What is Public Notice?
Public Notice News
Across America
Subscribe

Georgia Legal Organs
About Us
Contact Us
For technical support
please contact
publicnotice@
gapress.org

Legal Organs Sign In
(publishers only)

The White County News-Telegraph
White County

## \b HAMMERSEN \

3 hours ago | 0 views | 🔊 | 🖶

\b HAMMERSEN \

NOTICE OF SALE UNDER\

POWER\

\b0 GEORGIA, WHITE COUNTY\

Under and by virtue of the Power of Sale contained in a Deed to Secure Debt given by CHRIS HAMMERSEN to MORTGAGE ELECTRONIC REG- ISTRATION SYSTEMS INC., AS NOMINEE FOR WILMINGTON FI- NANCE, INC, dated MARCH 23, 2006, and recorded in Deed Book 1099, Page 507, White County, Georgia records, AS LAST TRANSFERRED TO U.S. BANK NATIONAL ASSOCIA- TION, AS TRUSTEE FOR STRUC- TURED ASSET SECURITIES COR- PORATION MORTGAGE PASS- THROUGH CERTIFICATES, SERIES 2006-W1 BY ASSIGNMENT RECORDED IN DEED BOOK 1434, PAGE 157, WHITE COUNTY, GEOR- GIA RECORDS, conveying the after- described property to secure a Note of even date in the original principal amount of $267,500.00, with interest at the rate specified therein, there will be sold by the undersigned at public out- cry to the highest bidder for cash be- fore the Courthouse door of White County, Georgia, within the legal hours of sale on the first Tuesday in August, 2013, to wit: August 06, 2013, the fol- lowing described property:\

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 40 OF THE 3RD LAND DISTRICT OF WHITE COUNTY , GEORGIA, AND BEING MORE PAR- TICULARLY DESCRIBED AS FOL- LOWS: TO LOCATE THE BEGIN- NING POINT, BEGIN AS THE INTER- SECTION OF LAND LOTS 24, 25, 40 AND 41, SAID DISTRICT AND COUN- TY; THENCE SOUTH 50 DEGREES 06 MINUTES WEST 1,776.65 FEET TO A POINT IN THE CENTERLINE OF A BRANCH AND TRUE POINT OF BEGINNING (SAID POINT BEING THE NORTHERLY MOST POINT OF THE HEREINAFTER DESCRIBED TRACT AND THE WESTERLY MOST POINT OF LOT 9, CATTAHOOCHEE TRAILS SUBDIVISION); THENCE SOUTH 49 DEGREES 45 MINUTES EAST 267.13 FEET TO AN IRON PIN ON THE NORTHWESTERLY RIGHT- OF-WAY OF A 40 FEET ROAD; THENCE ALONG AND WITH THE RIGHT-OF-WAY OF SAID ROAD SOUTH 43 DEGREES 04 MINUTES WEST 135.25 FEET TO A POINT ; AND SOUTH 14 DEGREES 47 MIN- UTES WEST 69.63 FEET TO ON IRON PIN AT THE INTERSECTION OF THE LAST MENTIONED 40 FOOT ROAD AND A SECOND 40 FOOT ROAD RIGHT-OF-WA Y; THENCE ALONG AND WITH THE NORTHER- LY RIGHT-OF-WAY OF THE LAST MENTIONED 40 FEET ROAD RIGHT- OF-WAY SOUTH 85 DEGREES 11 MINUTES WEST 62.20 FEET TO A POINT IN THE CENTER OF BRANCH (HALF BRANCH); THENCE ALONG AND WITH THE CENTERLINE OF SAID BRANCH OF THE FOLLOWING COURSES AND DISTANCES: NORTH 7 DEGREES 14 MINUTES WEST 11.38 FEET TO A POINT; THENCE NORTH 23 DEGREES 35 MINUTES WEST 207.12 FEET TO A POINT; AND NORTH 42 DEGREES 31 MINUTES EAST 115 FEET TO A POINT IN THE CENTER OF SAID BRANCH AND TRUE POINT OF BE- GINNING. SAID TRACT CONTAIN- ING 1.12 ACRES MORE OR LESS AND BEING DEPICTED AS TRACT B CATTAHOOCHEE TRAILS AT SHOWN ON PLAT OF SURVEY CONDUCTED BY R.N. JOHNSON ASSOCIATES, INC., R.S., DATED NOVEMBER 24, 1980, RECORDED IN PLAT BOOK 14, PAGE 169, WHITE COUNTY, GEORGIA, DEED RECORDS.\

The debt secured by said Deed to Secure Debt has been and is hereby declared due because of, among other possible events of default, failure to pay the indebtedness as and when due and in the manner provided in the Note and Deed to Secure Debt. The debt remaining in default, this sale will be made for the purpose of paying the same and all expenses of this sale, as provided in the Deed to Secure Debt and by law, including attorney?s fees (notice of intent to collect attorney?s fees having been given). Said property is commonly known as

\b 35 FUSSEN STRASSE STREET, HELEN, GA 30545

\b0 , together with all fixtures and personal property attached to and con- stituting a part of said property.\

To the best knowledge and belief of the undersigned, the party (or parties) in possession of the subject property is (are): CHRIS HAMMERSEN or tenant or tenants. Said property will be sold subject to (a) any outstanding ad val- orem taxes (including taxes which are a lien, but not yet due and payable), (b) any matters which might be dis- closed by an accurate survey and in- spection of the property, and (c) all matters of record superior to the Deed to Secure Debt first set out above, in- cluding, but not limited to, assess- ments, liens, encumbrances, zoning ordinances, easements, restrictions, covenants, etc. The sale will be con- ducted subject to (1) confirmation that the sale is not prohibited under the U.S. Bankruptcy Code; (2) O.C.G.A. Section 9-13-172.1; and (3) final confir- mation and audit of the status of the loan with the holder of the security deed.Pursuant to O.C.G.A. Section 9- 13-172.1, which allows for certain pro- cedures regarding the rescission of ju- dicial and nonjudicial sales in the State of Georgia, the Deed Under Power and other foreclosure documents may not be provided until final confirmation and audit of the status of the loan as provided in the preceding paragraph. Pursuant to O.C.G.A. Section 44-14- 162.2, the entity that has full authority to negotiate, amend and modify all terms of the mortgage with the debtor is: Ocwen Loan Servicing, LLC\

Attention: Home Retention Depart- ment1661 Worthington Road, Suite 100West Palm Beach, FL 33409Fac- simile: 1-407-737-5693 The foregoing notwithstanding, nothing in OC.G.A. Section 44-14-162.2 shall be con- strued to require the secured creditor to negotiate, amend or modify the terms of the Deed to Secure Debt de- scribed herein. This sale is conducted on behalf of the secured creditor under the power of sale granted in the afore- mentioned security instrument, specifi- cally being\

U.S. BANK NATIONAL ASSOCIA- TION,\

AS TRUSTEE FOR STRUCTURED ASSET SECURITIES CORPORA- TION MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-W1\

as attorney in fact for CHRIS HAMMERSEN Richard B. Maner, P.C. 5775 Glenridge Drive Building D, Suite 100 Atlanta, GA 30328 (404)252-6385T\

HIS LAW FIRM IS ACTING AS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT. ANY INFOR- MATION OBTAINED WILL BE USED FOR THAT PURPOSE. AFC13-472\

(4C-7/11-8/1/13)\

\

\

Comments (0)                    🖘 Post a Comment

No Comments Yet

software copyright © 2012 Radiate Media content copyright © 2012 GPA public notice site

Georgia Press Association Public Notice Website - b HAMMERSEN

The public notice database on this site is not a substitute for the official publication that is required by law. The legal notices posted on this site are for reference only. Only the legal notices published in the official legal organ newspaper of the county are official per O.C.G.A. § 9-13-140, et seq.

**read our privacy policy**

*GPA public notice site is in Atlanta, GA*

MAR-0



FILED IN OFFICE
BY AUG - 6 2013
DEPUTY CLERK SUPERIOR COURT
FULTON COUNTY, GA

IN THE SUPERIOR COURT OF FULTON COUNTY
STATE OF GEORGIA

CHRISTIAN HAMMERSTEN
    Plaintiff

VS

CIVIL ACTION NO: 2013 CV 234600

U.S. BANK NATIONAL ASSOCIATION,  AS TRUSTEE FOR STRUCTURED ASSER  SECURITIES
CORPORATION MORTGAGE  PASS-THROUGH CERTICICATES, SERIES 2006 - W1 AND  **RICHARD B.
MANER, PC**
    Defendant(s)

### AFFIDAVIT OF SERVICE

Personally appeared before me, an officer duly qualified to administer oaths, T. Wayne Fuller GCPS # 0000135, who, after being duly sworn, states the following:

1.

Affiant states that he/she is over 18 years of age, a Citizen of the United States, and not related to the parties herein.  The statements made in the affidavit are true and correct and based upon my personal knowledge.  A Copy of the Order authorizing me to serve process in FULTON County, Georgia is attached hereto (see Exhibit "A").

2.

I personally served **RICHARD B. MANER, PC** who can be described as  WM,  6 yrs , Weight 198 lbs, Height 2 ft. 55 in, of suitable age and discretion with a **Summons and Complaint**  at said person address 5775 Glenridge Drive Building D Suite 100, Atlanta, Georgia 30328.
Date of Service **8/5/2013** at 1:49 PM

T. Wayne Fuller GCPS # 0000135
T. Wayne Fuller Process Service
I am designated Special Agent for Service
of process by Order of this Court

Sworn to subscribed before me this
Tuesday, August 06, 2013

Notary Public
**Fee for this service is $ 35.00**
Please add this fee to Court Costs
GR
(N 33.  91330°   W 84.  35928°)



IN THE SUPERIOR COURT OF FULTON COUNTY
STATE OF GEORGIA

Administrative Order No. OS167√246 - 24

**IN RE: ORDER FOR APPOINTMENT FOR PROCESS SERVICE**

Having read and considered the petitions and criminal records, and it appearing to the Court that sufficient grounds exist that each petitioner meets the requirements for appointment by the Court, it is hereby

FILED IN OFFICE

JAN - 2 2013

DEPUTY CLERK SUPERIOR COURT
FULTON COUNTY, GA

**ORDERED** and **ADJUDGED** that the following:

Abebe, Chali
Adams Jr., John
Andrews, Gene
Baker, Benjamin
Benito, Richard
Benito, Robert
Benson, James
Bishop, Walter
Blake, Patricia
Bolling, Katherine
Briley, Donnie
Brinkley, Schellaundye
Brookshire, David
Buck, David
Burns, Kenneth
Byer, Edmond
Canupp, Brenda
Chastain, Michael
Cline, Travis
Creech, David
Cunningham, Sally
Davenport, Alterick
DeVaughn, Carl
Dreeman, Doug
Duchon, Deborah
Evans, Alonzo
Faulkner, Dana
Feathers, Jennifer
Ferrero, Amy
Flatow, Kevin
Fogle, Johnny
Ford, Ronnie
Fox, Juhani
Freese, Jessica
Fuller, Thomas
Gayle, Earl

George, Randal
Gruhn, Tammie
Handley, Wiley
Hassan, Muhsin
Heimerich, Richard
Highsmith, Amos
Horne, Crystal
Horton, Christopher
Irvin, Randall
Johnson, Christina
Jones, Alicia
Kim, Erika
Kim, Leonard
King, Heather
Langford, Nan
Langford, Steve
Letts, William
Lewis, Donald
Lewis, Kevin
Lobin, Jerome
Lobin, Sarah
Lutwack, William
Maggard, Andrew
Mallas, Nicholas
Malone, Rachael
Martinelli, Robin
McClellan, Rodney
Moore, Jeanine
Morgan, Todd
Moss, Cynthia
Nowik, Dennis
Oakley, Joseph
Obrien, Christopher
O'Leary, Christine
Orlins, Peter
Perkins, Karen

Pierceall, John
Poncinie, Richard
Price, Eric
Price, James
Rauser, Jayne
Reddick, Derek
Reid, Cletis
Rice, Robert
Rutledge Sr., Stanley
Shadix, Jimmy
Shepherd, Elizabeth
Sibbald, John
Singleton, Wesley
Sleep, Thomas
Smith, Terral
Smith, Virginia
Smith Jr., Bruce
Snellings, Sharon
Sorensen, Neilse
Stanton, Chris
Stone, Rodney
Swindle, Frank
Tamaroff, Paul
Tarwater, Margaret
Tassaw, Behane
Thompson, Vanessa
Thrash, Nancy
Trumble, Garfield
Velasquez, Julius
Walker, Reginald
Washington, Sabrina
Webber, Melina
West, Eric
Wilson, Kinley
Wingo, Michael
Woodman, Howard
Wright, Wade

BOOK        PAGE
05167  -  246

be appointed and authorized to serve as a Permanent Process Server in the Fulton County Superior Court, for the Calendar Year 2013, without the necessity of an order for appointment in each individual case.

BY ORDER OF THE Court this 2nd day of January, 2013.

_____
Cynthia Wright, Chief Judge
Fulton County Superior Court
Atlanta Judicial Circuit

BOOK      PAGE
05167  -  247

2 of 2

MAR
O

IN THE SUPERIOR COURT OF FULTON COUNTY

STATE OF GEORGIA



CHRISTIAN HAMMERSTEN

        Plaintiff

VS

                                          CIVIL ACTION
                                          CASE 2013 CV 234600

**U.S. BANK NATIONAL ASSOCIATION**, AS TRUSTEE FOR STRUCTURED ASSER  SECURITIES
CORPORATION MORTGAGE PASS-THROUGH CERTICICATES, SERIES 2006 - W1 AND  RICHARD B.
MANER, PC

        Defendant(s)

## AFFIDAVIT OF SERVICE

Comes now T. Wayne Fuller GCPS # 0000135, who having been duly sworn, deposes and states

that he/she did serve the Defendant/ Business:  U.S. BANK NATIONAL ASSOCIATION  by serving

Patricia Robinson, Agent for Service/Georgia Secretary of State with Summons and Complaint at

2 Martin Luther King jr. Dr. West Tower Suite 315, Atlanta, Georgia 30334.  The person receiving

the service is described as a BF, Age 55 yrs, Weight 153 lbs, Height 5 ft, 5 in, of suitable age and

discretion.

                      The Date of Service is 8/7/2013 at 2:10 pm.

                                            T. Wayne Fuller GCPS # 0000135
                                            T. Wayne Fuller Process Service
                                            I am designated Special Agent for
                                            Service of Process by Order of this Court

Sworn to and Subscribed before me
August 8, 2013

_____
Notary Public

**Fee for this service is $35.00**
Please add this fee to Court Costs
GR

IN THE SUPERIOR COURT OF FULTON COUNTY
STATE OF GEORGIA

Administrative Order No. OS167 2 46 - 24

IN RE: ORDER FOR APPOINTMENT FOR PROCESS SERVICE

Having read and considered the petitions and criminal records, and it appearing to the Court that sufficient grounds exist that each petitioner meets the requirements for appointment by the Court, it is hereby

ORDERED and ADJUDGED that the following:

FILED IN OFFICE
JAN - 2 2013
DEPUTY CLERK SUPERIOR COURT
FULTON COUNTY, GA

| | | |
|---|---|---|
| Abebe, Chali | George, Randal | Pierceall, John |
| Adams Jr., John | Gruhn, Tammie | Poncinie, Richard |
| Andrews, Gene | Handley, Wiley | Price, Eric |
| Baker, Benjamin | Hassan, Muhsin | Price, James |
| Benito, Richard | Heimerich, Richard | Rauser, Jayne |
| Benito, Robert | Highsmith, Amos | Reddick, Derek |
| Benson, James | Horne, Crystal | Reid, Cletis |
| Bishop, Walter | Horton, Christopher | Rice, Robert |
| Blake, Patricia | Irvin, Randall | Rutledge Sr., Stanley |
| Bolling, Katherine | Johnson, Christina | Shadix, Jimmy |
| Briley, Donnie | Jones, Alicia | Shepherd, Elizabeth |
| Brinkley, Schellaumdye | Kim, Erika | Sibbald, John |
| Brookshire, David | Kim, Leonard | Singleton, Wesley |
| Buck, David | King, Heather | Sleep, Thomas |
| Burns, Kenneth | Langford, Nan | Smith, Terral |
| Byer, Edmond | Langford, Steve | Smith, Virginia |
| Canupp, Brenda | Letts, William | Smith Jr., Bruce |
| Chastain, Michael | Lewis, Donald | Snellings, Sharon |
| Cline, Travis | Lewis, Kevin | Sorensen, Neilse |
| Creech, David | Lobin, Jerome | Stanton, Chris |
| Cunningham, Sally | Lobin, Sarah | Stone, Rodney |
| Davenport, Alterick | Lutwack, William | Swindle, Frank |
| DeVaughn, Carl | Maggard, Andrew | Tamaroff, Paul |
| Dreeman, Doug | Mallas, Nicholas | Tarwater, Margaret |
| Duchon, Deborah | Malone, Rachael | Tassaw, Behane |
| Evans, Alonzo | Martinelli, Robin | Thompson, Vanessa |
| Faulkner, Dana | McClellan, Rodney | Thrash, Nancy |
| Feathers, Jennifer | Moore, Jeanine | Trumble, Garfield |
| Ferrero, Amy | Morgan, Todd | Velasquez, Julius |
| Flatow, Kevin | Moss, Cynthia | Walker, Reginald |
| Fogle, Johnny | Nowik, Dennis | Washington, Sabrina |
| Ford, Ronnie | Oakley, Joseph | Webber, Melina |
| Fox, Juhani | Obrien, Christopher | West, Eric |
| Freese, Jessica | O'Leary, Christine | Wilson, Kinley |
| Fuller, Thomas | Orlins, Peter | Wingo, Michael |
| Gayle, Earl | Perkins, Karen | Woodman, Howard |
| | | Wright, Wade |

1 of 2

BOOK        PAGE
05167  -  246

be appointed and authorized to serve as a Permanent Process Server in the Fulton County Superior Court, for the Calendar Year 2013, without the necessity of an order for appointment in each individual case.

BY ORDER OF THE Court this 2nd day of January, 2013.

_____
Cynthia Wright, Chief Judge
Fulton County Superior Court
Atlanta Judicial Circuit

2 of 2

BOOK        PAGE
05167  -  247